481 A.2d 192

**Jacob Edward SITES**

v.

**STATE of Maryland.**

**No. 148, Sept. Term, 1983.**

Court of Appeals of Maryland.

Sept. 12, 1984.

Motion for Reconsideration Denied
Oct. 1, 1984.

Michael R. Braudes, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, William R. Hymes, State's Atty., for Howard County and Martin J. McNamara, Asst. State's Atty., Ellicott City, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

The primary issue in this case is whether a person apprehended for driving while intoxicated has a statutory or constitutional right to consult counsel before deciding whether to submit to a chemical sobriety test.

I.

The record establishes that Jacob Edward Sites was stopped for drunk driving at approximately 12:45 a.m. on May 15, 1982. At 12:55 a.m., while still at the scene, the arresting officer read Sites a standardized statement of his rights and the penalties for refusal to submit to a chemical test under the State's implied consent statute, Maryland Code (1984 Repl.Vol.), § 16–205.1 of the Transportation Article.[1] Upon the police officer's request, Sites agreed to

---

1. The Advice of Rights and Administrative Penalties for Refusal to Submit to a Chemical Test statement, sometimes referred to as a "DR15," is drawn from § 16–205.1 of the Transportation Article; it provides:

"Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this state is deemed to have consented, with certain limitations, to take a Chemical Test to determine the alcohol content of his blood.

Pursuant to law, I am hereby advising you that you have been stopped or detained on reasonable grounds on suspicion that you have been driving or attempting to drive a motor vehicle while intoxicated or while under the influence of alcohol. I am further advising you of your right to select the Chemical Test of your choice which are blood or breath tests to determine the alcoholic content of your blood: and, further, I am offering you such chemical test to be administered by a person examined and certified as qualified by the Maryland State Police and requesting that you submit to such a chemical test.

(1) The results of such test may be admissible and may be considered with other competent evidence in determining your guilt or innocence in any prosecution relating to your driving or attempting to drive a motor vehicle, while either intoxicated or under the influence of alcohol.

(2) That you have the right to refuse to submit to any such tests, and on your refusal, no test shall be administered.

(3) That your refusal to submit to a chemical test shall result in the suspension of your driver's license and/or driving privilege for not less than 60 days nor more than 6 months and, if you are a

take a chemical sobriety test and signed the required consent form. The officer then drove him to the Howard County Police Station, a five-minute journey by car from the location of the arrest. According to Sites' testimony at trial, he thrice requested permission to telephone his attorney at some point after arriving at the police station, both before and after the test was administered, but the arresting officer said he had no right to counsel. The arresting officer's testimony was that Sites could have made such requests, although the officer had no such recollection. A breathalyzer test was administered to Sites at 1:25 a.m., resulting in a finding of 0.17 percent ethyl alcohol by weight.[2] Sites was formally charged at 1:45 a.m. with driving while intoxicated.

Sites filed a pretrial motion to suppress the test results on the ground, *inter alia*, that he was denied his right to counsel prior to the administration of the chemical sobriety test. The Circuit Court for Howard County (Nissel, J.) ruled as a matter of law that Sites had no such right to consult counsel. The court said:

> "As far as his being entitled to an attorney, there's no law that I know of that he's entitled to an attorney for the purpose of taking advice of taking a test."

---

non-resident, such suspension may result in a subsequent suspension of your driver's license in the state of residence.
(4) That after submitting to a chemical test administered at the request of the arresting officer, you may also have a physician of your choice to administer a chemical test in addition to the one administered at the direction of the police officer. I have read or have been read the Advice of Rights for Chemical Test and have been advised of administrative penalties that may be imposed for refusal to take a chemical test. I understand that this requested test is in addition to any preliminary road-side test that was taken. Having been so advised, do you now agree to submit to a Chemical Test to determine the alcohol content of your blood? (*This is not an admission of guilt*) ☐ Test Refused (*Officer Check Reply*)"

2. In Maryland, a finding of 0.08 percent constitutes prima facie evidence of driving under the influence of alcohol, and a finding of 0.13 percent is prima facie evidence of driving while intoxicated. Code (1984 Repl.Vol.), § 10–307(d)–(e) of the Courts and Judicial Proceedings Article.

Sites was thereafter convicted by a jury of driving while intoxicated. We granted certiorari prior to consideration of Sites' appeal by the Court of Special Appeals to consider the issue of public importance raised in the case. 298 Md. 353, 469 A.2d 1274.

## II.

### *The Statutory Right to Counsel*

Sites maintains that he had a statutory right to consult counsel before deciding whether to submit to a chemical test for sobriety. He contends that § 16–205.1 of the Transportation Article and § 10–309 of the Courts Article mandate that police provide an opportunity to persons apprehended for drunk driving to communicate with counsel before making the decision whether to submit to the test.

Section 10–303 of the Courts Article requires that the chemical sobriety test be administered within two hours "after the person accused is apprehended." Section 10–309 provides, with certain exceptions not here applicable, that a person may not be compelled to submit to such a test. The section further provides that no inference or presumption concerning guilt arises because of refusal to submit to the test, and that the fact of refusal to submit is not admissible in evidence at the trial. Section 16–205.1(a) of the Transportation Article explicitly states that any person who operates a motor vehicle in this State is deemed to have consented (with exceptions not here pertinent) to take a chemical test to determine alcohol content if apprehended on suspicion of drunk driving. Subsection (b) of this section provides that a licensed Maryland driver, who declines to take the test, shall have his license suspended for not less than 60 days nor more than 6 months for a first offense. Section 16–205.1(b)(2) delineates the formal prerequisites which must be met before a chemical test may be administered. No right is there afforded to confer with counsel prior to deciding whether to take the test. In contrast, § 16–205.-1(f)(3) specifically provides that a person refusing a chemi-

cal test may be represented by an attorney in subsequent proceedings, indicating that had the legislature intended to provide a pretest right to confer with counsel, it would specifically have so provided.

 The cardinal rule of statutory construction is to ascertain and effectuate the actual legislative intent. *See, e.g., In Re Arnold M.,* 298 Md. 515, 471 A.2d 313 (1984); *Koyce v. State, Central Collection Unit,* 289 Md. 134, 422 A.2d 1017 (1980). The primary source of the legislative intent is the language of the statute itself. *See, e.g., Blum v. Blum,* 295 Md. 135, 453 A.2d 824 (1983); *Haskell v. Carey,* 294 Md. 550, 451 A.2d 658 (1982). Where the statutory provisions are unambiguous, no construction is required. *See, e.g., Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 458 A.2d 758 (1983); *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980). Thus, it is manifest that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. *Guy v. Director,* 279 Md. 69, 367 A.2d 946 (1977).

 The trial court found as a fact at the hearing on the motion to suppress that Sites' consent to take the test was obtained in accordance with all statutory requirements. *See State v. Moon,* 291 Md. 463, 436 A.2d 420 (1981); *State v. Loscomb,* 291 Md. 424, 435 A.2d 764 (1981). The requirements of the statute having been met, no basis exists for suppressing the breathalyzer evidence based on the claimed denial of the opportunity to consult with counsel. *See generally* Annot., 18 A.L.R.4th 705 (1982).

### The Sixth Amendment Right To Counsel

Sites maintains that he had a right under the Sixth Amendment to the Federal Constitution to communicate with counsel prior to submitting to the chemical sobriety test. He asserts that the pretest period is a "critical stage" of the drunk driving prosecution in that the defendant is called upon to make a choice between taking or not taking

the test—a choice, he says, which will have a substantial and irreversible impact on the ensuing trial. As Sites puts it, the decision whether to take the test is "the whole ball game" in drunk driving cases. He states:

> "If [the drunk driving suspect] submits and is in fact intoxicated, he has virtually no chance of winning the criminal case. If he refuses, he loses his license. A police officer quickly and mechanically reading a litany of rights cannot help him to make this choice. An attorney, professionally obligated to assist the suspect, may well be able to guide him toward the least of the evils."

■ Under the Sixth Amendment, a right to counsel attaches, *inter alia,* at the time of certain evidence-gathering processes which are deemed "critical stages" of the criminal prosecution as an extension of a defendant's right to representation by counsel in court. Some courts have held that a Sixth Amendment right to counsel, which is applicable to the states through the Fourteenth Amendment, does afford a person apprehended for drunk driving a right to communicate with counsel before deciding whether to take a chemical sobriety test. *See State v. Welch,* 135 Vt. 316, 376 A.2d 351 (1977); *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893 (1980); *State v. Bristor,* 9 Kan.App.2d 404, 682 P.2d 122 (1984). Most courts, however, have reached a contrary conclusion, finding no Sixth Amendment right to counsel. *See Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971); *State v. Vietor,* 261 N.W.2d 828 (Iowa 1978); *State v. Jones,* 457 A.2d 1116 (Me.1983); *Spradling v. Deimeke,* 528 S.W.2d 759 (Mo.1975); *State v. Petkus,* 110 N.H. 394, 269 A.2d 123 (1970), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1522, 28 L.Ed.2d 867 (1971); *Seders v. Powell,* 298 N.C. 453, 259 S.E.2d 544 (1979); *McNulty v. Curry,* 42 Ohio St.2d 341, 328 N.E.2d 798 (1975); *State v. Newton,* 291 Or. 788, 636 P.2d 393 (1981); *Law v. Danville,* 212 Va. 702, 187 S.E.2d 197 (1972); *Holmberg v. 54–A Judicial District Judge,* 60 Mich.App. 757, 231 N.W.2d 543 (1975).

The Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) clearly limited the scope of

that which may be deemed a critical stage of the criminal prosecution. It held that the Sixth Amendment right to counsel does not attach until or after the initiation of an adversarial criminal proceeding by way of indictment, information, or other formal charge, arraignment or a preliminary hearing of the type involved in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The *Kirby* test has been reaffirmed by the Supreme Court in a number of later cases. *See United States v. Gouveia,* —— U.S. ——, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Consistent with *Kirby* and its progeny, we recently held in *Webster v. State*, 299 Md. 581, 474 A.2d 1305 (1984) that the formal charge is the legal event that marks the starting point of the right to counsel under the Sixth Amendment.

■ In the present case, Sites was not formally charged until 1:45 a.m. on May 15, 1982, which was twenty minutes after he took the breathalyzer test and fifty minutes after he signed the consent form. We therefore conclude that his request for counsel before taking the test was not made at a critical stage of the proceeding and that, consequently, no Sixth Amendment right to the assistance of counsel attached before the test was administered.[3]

### Due Process Right To Counsel

Appellant contends that he had a due process right under the Fourteenth Amendment to communicate with counsel preliminary to making the determination whether to submit

---

**3.** The right to counsel provisions of Article 21 of the Maryland Declaration of Rights, upon which Sites also places reliance, are in *pari materia* with the Sixth Amendment. *Williams v. State,* 292 Md. 201, 438 A.2d 1301 (1981). That state constitutional provision, therefore, affords Sites no right to counsel in the circumstances of this case.

to the chemical test. He relies primarily upon *People v. Gursey*, 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351 (1968); *Troy v. Curry*, 36 Ohio Misc. 144, 303 N.E.2d 925 (1973); *State v. Newton*, 291 Or. 788, 636 P.2d 393 (1981)— all cases involving implied consent laws similar to the Maryland statute where, as here, the arrestee asked to communicate with counsel prior to taking the sobriety test.

In *Gursey*, the issue before the court was "whether a criminal conviction may rest upon the results of a chemical test performed over the defendant's initial objection and after he had been prevented from telephoning his lawyer for legal advice concerning the test, such communication involving no significant or obstructive delay." 239 N.E.2d at 352. The lower appellate court had determined that the denial of the arrestee's request to telephone counsel consti- tuted a violation of his "constitutional rights." *Id.* In affirming that judgment, the Court of Appeals of New York concluded "that the test results were secured in violation of defendant's privilege of access to counsel without occasion- ing any significant or obstructive delay." *Id.* The court recognized that the defendant "possessed a number of statutory options which could be asserted only during the transaction at the station house, and concerning which the advice of counsel, if available, was relevant." *Id.* at 352–53. The court said:

"[L]aw enforcement officials may not, without justifica- tion, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand....

\* \* \* \* \* \*

"... Granting defendant's requests would not have substantially interfered with the investigative procedure, since the telephone call would have been concluded in a matter of minutes.... Consequently, the denial of de- fendant's requests for an opportunity to telephone his

lawyer must be deemed to have violated his privilege of access to counsel." *Id.* at 352–53.

The court in *Gursey* added this caveat:

"The privilege of consulting with counsel concerning the exercise of legal rights, should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses." *Id.* at 353.

But, the court reiterated:

"... Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed.... If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel." *Id.* at 353.

The court emphasized that "there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene." *Id.* In so stating, the court referred, with approval, to the concurring opinion in an earlier civil license revocation appeal, *Finocchairo v. Kelly,* 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E.2d 427 (1962).

In *Finocchairo,* as in *Gursey,* the police denied the defendant permission to call his lawyer before making the choice whether to take the sobriety test. The concurring opinion, while declining to decide whether, in a criminal prosecution, any of the defendant's constitutional rights would have been violated by refusal to permit communication with counsel prior to taking the test, expounded at length upon due process considerations inherent in the police refusal. At one point, the concurring opinion said "that it was in violation of due process of law *as part of a criminal prosecution* to have refused respondent opportunity to telephone to his lawyer." 181 N.E.2d at 428–29 (emphasis in original). At another point, the concurring opinion spoke of due process as a concept which varies

according to the context, its substance being ingrained in our national traditions, with fairness of procedure constituting due process in the primary sense, citing Supreme Court authorities. *Id.* at 429. The substance of due process, the concurring opinion continued, "required that respondent, having been arrested on a criminal charge, should be afforded opportunity on request to telephone to his lawyer provided that he could have reached him promptly." *Id.*

*Troy v. Curry, supra,* was an Ohio Municipal Court decision which held, in a single conclusory sentence, that failure to permit consultation with counsel was unconstitutional under the due process clause of the Fourteenth Amendment.

In *State v. Newton, supra,* the Supreme Court of Oregon while finding no Sixth Amendment right to counsel, concluded in a plurality opinion that the right of a person arrested for drunk driving timely to call his lawyer before taking the test was traditionally and rigorously observed with "roots deep in the law." 636 P.2d at 405. The plurality found the right to be so fundamental as to be embodied in the Fourteenth Amendment and thus to inhibit states to "deprive any person of . . . liberty . . . without due process of law." The court said that the defendant's freedom to call a lawyer before deciding whether to submit to a breathalyzer test was safeguarded by the Fourteenth Amendment, and specifically by the "Defendant's liberty to communicate," which was deemed a significant and substantial liberty free from "purposeless restraints." 636 P.2d at 406. The plurality said that "allowance of a telephone call following an arrest has become traditional and incommunicado incarceration is regarded as inconsistent with American notions of ordered liberty." *Id.* at 406.[4]

4. In *Heles v. State of S.D.,* 530 F.Supp. 646 (D.S.D.1982), the court held that under the due process clause of the Fourteenth Amendment, law enforcement officials could not, without justification, prevent a driver arrested for drunk driving from contacting a lawyer prior to submitting to sobriety testing, if such a request is made and does not unduly interfere with the administration of the test. On appeal, the judgment

■ The due process clause of the Fourteenth Amendment has long been recognized as a source of a right to counsel independent of the Sixth Amendment where critically important to the fairness of the proceedings. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Grano, *Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against The Danger Of Convicting The Innocent?,* 72 Mich.L.Rev. 719, 742–752 (1974). We recognized in *Rutherford v. Rutherford,* 296 Md. 347, 358, 464 A.2d 228 (1983) that the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights in that, under certain circumstances, "the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials." The concept of a due process right was described as far back as *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) as a guarantee of respect for those personal immunities which are so rooted in the traditions and conscience of our people as to be ranked as fundamental or implicit in the concept of ordered liberty. While the exact contours of the due process right are not definable with precision, the right, as restated in *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952), is one that assures that convictions cannot be brought about in criminal cases by methods which offend a sense of justice.

Other courts have concluded that a person apprehended for drunk driving has no due process right to communicate

was vacated on mootness grounds because of the appellant's death. 682 F.2d 201 (8th Cir.1982).

with counsel before deciding whether to submit to chemical testing. *See Gottschalk v. Sueppel,* 258 Iowa 1173, 140 N.W.2d 866 (1966); *State v. Jones,* 457 A.2d 1116 (Me.1983); *State v. Braunesreither,* 276 N.W.2d 139 (S.D.1979). Moreover, it is unclear whether the right to communicate with counsel found to exist by the New York Court of Appeals in *Gursey* (a pre-*Kirby* case) was based on the due process clause of the Fourteenth Amendment or upon some other constitutional or common law ground.

The Supreme Court recognized in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) that "the choice to submit or refuse to take a blood-alcohol test [in drunk driving cases] will not be an easy or pleasant one for a suspect to make." 103 S.Ct. at 923. By affording a suspect the power to refuse chemical testing, Maryland's implied consent statute deliberately gives the driver a choice between two different potential sanctions, each affecting vitally important interests. Indeed, revocation of a driver's license may burden the ordinary driver as much or more than the traditional criminal sanctions of fine or imprisonment. The continued possession of a driver's license, as the Supreme Court has said, may become essential to earning a livelihood; as such, it is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment. *See Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Considering all the circumstances, we think to unreasonably deny a requested right of access to counsel to a drunk driving suspect offends a sense of justice which impairs the fundamental fairness of the proceeding. We hold, therefore, that the due process clause of the Fourteenth Amendment, as well as Article 24 of the Maryland Declaration of Rights, requires that a person under detention for drunk driving must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test, as long as such attempted communication will not substantially interfere with the timely and efficacious

administration of the testing process. In this regard, it is not possible to establish a bright line rule as to what constitutes a reasonable delay, although the statute itself mandates that in no event may the test be administered later than two hours after the driver's apprehension. Of course, it is the statutory purpose to obtain the best evidence of blood alcohol content as may be practicable in the circumstances, and it is common knowledge that such content dissipates rapidly with the passage of time. Thus, if counsel cannot be contacted within a reasonable time, the arrestee may be required to make a decision regarding testing without the advice of counsel. We emphasize that in no event can the right to communicate with counsel be permitted to delay the test for an unreasonable time since, to be sure, that would impair the accuracy of the test and defeat the purpose of the statute. Manifestly, whether a driver who seeks to communicate with counsel has been denied his due process right to do so depends on the circumstances of each case. Where that right is plainly violated, and the individual submits to the test, we think the only effective sanction is suppression of the test results where adverse to the defendant. A reviewing court, however, should afford great deference to the determination of the police authorities that denial of the requested right of access to counsel was reasonably necessary for the timely administration of the chemical sobriety test.

The record in the present case discloses that a total of forty minutes elapsed between the time Sites was stopped for drunk driving and the time he took the breathalyzer test. The record does not disclose the point in time at which Sites first requested to communicate with counsel, *i.e.*, whether it was immediately upon entering the police station or whether it was only seconds before the test was actually to be administered in which event, because of the attendant delay that would thereafter ensue, it might have been unreasonable. Thus, there is nothing in the record to show whether, in the circumstances, the refusal of the police to permit a phone call (if in fact that occurred)

constituted a violation of Sites' due process right. On this record, therefore, we decline to order that the test results be suppressed.

## III.

Sites also alleges that the trial court committed "plain error" under Maryland Rule 757 h in failing to advise the jury in its instructions concerning intoxication as to "what prima facie meant, or that the presumption was rebuttable."

Sites did not except to the court's instructions nor did he seek the now requested instructions, as required by the rule. Moreover, we decline to take cognizance of the claimed omissions from the instructions as "plain error" under Rule 757 h since they are not so compelling, extraordinary, exceptional or fundamental as to have denied Sites a fair trial. *See Calhoun v. State,* 297 Md. 563, 594, 468 A.2d 45 (1983).

JUDGMENT AFFIRMED, WITH COSTS.