**Denise BRANK, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 9, 1987.
Decided: July 22, 1987.

Joseph M. Bernstein, Wilmington, for defendant below, appellant.

Gary A. Myers, Georgetown, (argued), Loren C. Meyers and Steven Wood, Dept. of Justice, Wilmington, Del., for plaintiff below, appellee.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice:

Appellant, Denise Brank, was convicted by a jury of Operating a Motor Vehicle While Under the Influence of Alcohol in violation of 21 *Del.C.* § 4177. Brank challenges her conviction on several grounds. She contends that the trial court erred by admitting into evidence statements she made after she had invoked her right to counsel, in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). She also assigns as error the trial court's ruling admitting into evidence the results of a blood test, which she argues was obtained in violation of her right to consult with counsel. She contends that 21 *Del.C.* § 2742, the statute under which the test was administered, is unconstitutional as a viola-

tion of the equal protection clause of the fourteenth amendment. Finally, Brank maintains that the trial judge improperly instructed the jury by creating a mandatory presumption of guilt in violation of the due process clause of the fourteenth amendment. We find no merit in defendant's contentions and affirm the conviction.

## I.

In the early morning hours of September 6, 1985, New Castle County Police responded to a report of an automobile collision on a residential street. There they found two damaged cars, which they learned by checking the registrations belonged to persons living on the street. One of the owners was Denise Brank. In order to investigate the accident, the police went to the Brank residence. They were admitted by the defendant's mother and found Denise Brank lying on a bed with a cut on her chin and a swollen lip. When asked to explain what had happened, Brank told the police that she had been involved in an altercation at a bar that night. When she left the bar to go home, she was followed by another car, whose driver attempted to run her off the road. This was the purported cause of the collision.

During the questioning, Brank attempted to stand up, but she staggered and had to grab a police officer for support. Smelling alcohol on her breath, the police sergeant on the scene decided that there was probable cause to arrest Brank for driving while intoxicated.

Brank was taken into custody and driven to a hospital where the police intended that she receive treatment for her injuries, and that a blood sample be drawn to determine her blood/alcohol content. Brank, however, refused treatment, stating she did not want to be treated without the approval of her lawyer. She continually asked to speak with counsel while at the hospital, stating she also did not want to submit to the blood test until he was present. When she was advised by the police officer that she did not have an option to refuse the blood test, she relented and blood was drawn. Brank continued to refuse medical treatment. At the hospital, the defendant made statements to the police, both in response to questioning and spontaneously, concerning the altercation at the bar and the collision. At this point no *Miranda* warnings had been given.

After the blood test was completed, Brank was taken to County police headquarters. For the first time she was given *Miranda* warnings. Brank indicated to the police that she understood all of her rights, and she agreed to answer questions. The police then asked her the questions which appear on the standard police Alcohol Influence Report. In response to these questions, Brank made self-incriminating statements.

Following a suppression hearing, the Superior Court concluded that the police had probable cause to detain Brank in order to obtain a blood sample, and therefore allowed the results of the blood test to be admitted into evidence. Statements made by the appellant while she was in her house were also admitted into evidence since she had not been taken into custody at that time, and thus no *Miranda* warnings were necessary. However, the Superior Court found that Brank was in custody for *Miranda* purposes when she was at the hospital, and since she had not been given *Miranda* warnings there, all statements made at the hospital were suppressed. Finally, the trial judge concluded that Brank's requests for counsel were made in connection with the blood test and medical treatment, not as an assertion of "the right to remain silent." Since the requests for counsel were not made after *Miranda* warnings were given, he found *Edwards v. Arizona* to be inapplicable to this case. Thus, the statements made at police headquarters, which came after *Miranda* warnings and an intelligent, knowing, and voluntary waiver of those rights, were also admitted into evidence.

## II.

Brank maintains that the statements she gave at police headquarters were inadmissible since they were made after she had requested the assistance of counsel. To

support this proposition, she relies primarily on *Edwards v. Arizona.* In *Edwards,* the Supreme Court of the United States announced a prophylactic rule that an accused person in custody who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police." *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1885. In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Supreme Court further clarified the analysis upon which this rule is based:

> First courts must determine whether the accused actually invoked his right to counsel ... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked ...

*Smith,* 469 U.S. at 95, 105 S.Ct. at 493 (citations omitted).

The defendant argues that she invoked her right to counsel at the hospital, and did not initiate further discussions with the police. Statements she made after the invocation are inadmissible, she argues, even though she was later advised of her rights and waived them. If Brank did in fact invoke her right to counsel at the hospital, this argument must prevail. When the police initiate further discussion, statements made after a request for counsel are inadmissible even if the suspect waives her *Miranda* rights. *Edwards,* 451 U.S. at 483, 101 S.Ct. at 1884; *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1103, *cert. denied,* —— U.S. ——, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

■ Here the threshold inquiry is whether Brank's requests for a lawyer at the hospital constituted an invocation of her right to counsel sufficient to trigger the *Edwards* rule. The trial court found that Brank's requests were made in connection with the blood test and medical treatment; and since they did not come after *Miranda*

warnings, they were insufficient to trigger the *Edwards* rule.

It is unnecessary for us to reach the question whether *Miranda* warnings must first be given before a request for a lawyer can trigger the *Edwards* rule. The record supports the trial court's findings that the purposes of Brank's requests did not invoke *Edwards.*

The *Edwards* analysis requires that we first determine "whether the accused actually invoked [her] right to counsel." *Smith,* 469 U.S. at 95, 105 S.Ct. at 493. By the very language of *Edwards,* the right to counsel which must be invoked is the right to have counsel present during a custodial interrogation:

> We now hold that when an accused has invoked *his right to have counsel present during custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.

*Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884–85 (emphasis added).

Thus, other courts have held that a request for counsel for specific purposes other than interrogation, such as to have a lawyer at trial, or to have a lawyer present during the taking of a polygraph examination, does not trigger the *Edwards* rule. *Jordan v. Watkins,* 681 F.2d 1067, 1073–74 (5th Cir.) *reh'g denied, Jordan v. Thigpen,* 688 F.2d 395 (5th Cir.1982); *Berry v. State,* Ga.Supr., 254 Ga. 101, 326 S.E.2d 748, 751 (1985).

In *Connecticut v. Barrett,* —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the Supreme Court of the United States recognized that an invocation of the right to counsel for a limited purpose does not lead inexorably to the conclusion that counsel has been requested for all purposes. In *Barrett,* an accused plainly invoked his right to counsel when refusing to give a written statement, but nonetheless indicated his willingness in the absence of counsel to talk about the incident that led to his arrest. The Court held that the oral statement was admissible. Recognizing

that the settled approach required them to give a broad interpretation to a defendant's request for counsel, the Court noted that such an "[i]nterpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous." *Barrett*, 107 S.Ct. at 832.

Here there was no such ambiguity. All of the testimony regarding the *purpose* of Brank's requests for counsel stated that they were made in connection with the blood test and medical treatment. She simply did not want to submit to the blood test, or receive any medical treatment without her lawyer being present. Clearly, then, there was competent evidence to support the trial judge's conclusion that Brank's requests for counsel were for these limited purposes. This Court will not disturb conclusions of fact made by the trial court when supported by competent evidence. *Martin v. State*, Del.Supr., 433 A.2d 1025, 1033 (1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982).

Since Brank's requests for counsel were unambiguously limited to these purposes, they were not an invocation of the right to counsel contemplated in *Edwards*. They did not relate to the right to have counsel present during custodial interrogation. Thus, in view of the limited purposes of Brank's requests for counsel, the trial judge was correct in holding *Edwards* inapplicable to the case.

### III.

Brank contends that she had a right under the due process clause of the fourteenth amendment to consult with counsel before deciding whether to submit to a blood/alcohol test. Thus, she argues that the admission into evidence of the results of her blood test, obtained in violation of this right, was error. In support of this proposition, Brank relies exclusively on the Maryland decisions in *Sites v. State*, Md.Ct. App., 300 Md. 702, 481 A.2d 192 (1984) and *Brosan v. Cochran*, Md.Ct.App., 307 Md. 662, 516 A.2d 970 (1986).

In *Sites*, the Maryland Court of Appeals held that the due process clause of the fourteenth amendment "requires that a person under detention for drunk driving must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test ..." *Sites*, 481 A.2d at 200.

In *Brosan*, the right announced in *Sites* was further clarified. *Brosan* held that the police could not limit the right to consult with counsel to telephonic communication only. *Brosan*, 516 A.2d at 974. The court also held that the right to counsel recognized in *Sites* included the right of counsel to administer private breathalyzer tests to aid the client in deciding whether to submit to the State's test. *Id.*, 516 A.2d at 975–76.

Brank does not claim, and *Sites* explicitly rejected the claim, that this right to counsel arises under the sixth amendment. Contrary to *Sites*, other courts have held that a right to counsel before deciding whether to submit to a blood/alcohol test is not guaranteed by the due process clause. *See, e.g., Drake v. Colorado Department of Revenue*, Colo.Supr., 674 P.2d 359, 361–62 (1984); *State v. Armfield*, Mont.Supr., 693 P.2d 1226, 1230–31 (1984); *State v. DeLorenzo*, N.J.Super.App.Div., 210 N.J.Super. 100, 509 A.2d 238, 241, *cert. denied*, 105 N.J. 507, 523 A.2d 154 (1986).

In any event, we consider ourselves bound by the action of the Supreme Court of the United States in *Nyflot v. Minnesota Comm'r of Public Safety*, 474 U.S. 1027 106 S.Ct. 586, 88 L.Ed.2d 567 (1985), summarily dismissing "for want of a substantial federal question" a case which presented the claim that an arrested driver had a right, under either the sixth amendment or the due process clause, to consult with counsel before submitting to a blood/alcohol test. Under the doctrine of *Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), this Court is bound by the summary action in *Nyflot*.

Brank argues that *Nyflot* is not controlling here because *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977), recognized that the precedential value of a summary action must be assessed

in light of all the facts in the case. Specifically, she contends that there are "significant differences" between the Minnesota implied consent statute at issue in *Nyflot* and the Delaware implied consent law involved here, which diminish *Nyflot's* precedential value. The defendant's due process claim in *Nyflot* was rejected by the Minnesota Supreme Court because they viewed the implied consent law as requiring the suspect to take the test. *Nyflot v. Commissioner of Public Safety*, Minn.Supr., 369 N.W.2d 512, 516–17 (1985) ("Due Process does not require giving an arrested driver a right to consult with counsel before deciding whether to take a test that the law says he is required to take, particularly where he is properly advised that he is required to take it."), *appeal dismissed*, 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The Delaware statute, she argues, is different in that it does not require the arrested driver to take the test.

We are unpersuaded by this argument. The Delaware implied consent law "requires" the arrested driver to take a blood/alcohol test to the same extent as its Minnesota counterpart—refusal under both statutes is met with the penalty of revocation of the driver's license. There is no significant difference between the two statutes in this respect.

In fact the Delaware statute is more stringent than that of Minnesota in requiring a driver to take the test.[1] Indeed, it is for this reason that appellant's due process

claim must fail, even in the absence of binding precedent. Under 21 *Del.C.* § 2742(a), "if a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test *shall not be given* ..." However, Section 2742(a) also states that "the police officer may ... take reasonable steps to conduct such chemical testing *even without the consent* of such person if he seeks to conduct such test or tests *without informing the person of the penalty of revocation* for such refusal and thereby invoking the implied consent law." (Emphasis added.)

Thus, under Delaware law the police can require a suspect to submit to testing without that person's consent by reason of the second sentence of Section 2742(a). As Brank concedes, this renders the opportunity to consult counsel prior to testing, recognized in *Sites*, meaningless. *Sites'* recognition of this right to counsel was premised on the fact that under Maryland law the police are required to inform a suspect of the right to refuse to submit to testing, and to inform him of the penalties imposed for such a refusal. *Sites*, 481 A.2d at 194 n. 1. The fact that the suspect had an option under the statute—to take or refuse to take the sobriety test—was crucial to the holding in *Sites*. *Id.*, 481 A.2d at 197–98. Here, the police proceeded under the second sentence of Section 2742(a) and informed Brank that she did not have an option to refuse the test. Thus she was

1. The Delaware Implied Consent provisions provide in relevant part:

Any person who drives, operates or has in actual physical control a vehicle, an off-highway vehicle, a moped or a bicycle within this State shall be deemed to have given his consent, subject to this section and § 4177 of this title to a chemical test or tests of his blood, breath and/or urine for the purpose of determining the presence of alcohol or a drug or drugs. The testing may be required of a person when an officer has probable cause to believe the person was driving, operating or in physical control of a vehicle in violation of § 4177 or 2742 of this title, or a local ordinance substantially conforming thereto.

21 *Del.C.* § 2740

At the time a chemical test specimen is required, the person may be informed that if testing is refused, the person's driver's license

and/or driving privilege shall be revoked for a period of at least 1 year. The test(s) shall be administered by qualified personnel, as defined in § 2746 of this title, at the direction of the police officer who shall designate which of the tests shall be administered.

21 *Del.C.* § 2741(a).

If a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test shall not be given but the police officer shall report the refusal to the Department. The police officer may, however, take reasonable steps to conduct such chemical testing even without the consent of the person if he seeks to conduct such test or tests without informing the person of the penalty of revocation for such refusal and thereby invoking the implied consent law.

21 *Del.C.* § 2742(a).

afforded no "choice" under the statute. Clearly, then, she had no due process right to consult with counsel before submitting to a test which she was required by law to take. *Accord Nyflot*, 369 N.W.2d at 516–17; *Delorenzo*, 509 A.2d at 244; *State v. Hoch*, Fla.Dist.Ct.App., 500 So.2d 597, 600–01 (1986). Under the circumstances, *Sites* is inapplicable, and we decline to follow it.

■ Realizing that the right to consult counsel can only be meaningful where there is an option provided by the statute, and that defendant was denied this option, Brank contends that the statute which produced this result is a violation of the equal protection clause of the fourteenth amendment. The statute, she argues, creates two classes of drunk driving suspects—those who are informed by the police of the penalty for refusal to submit to testing, and those who are not. A refusal to submit to testing by those in the first class of suspects will be honored by the police, while a refusal by those in the second class will not be. Thus, the individual police officer's decision whether or not to inform a suspect of the penalty for refusal determines how the suspect will be classified. Brank views this legislative scheme as arbitrary and irrational. We disagree.

When a challenge to legislation is brought under the equal protection clause, the general rule is that the legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.[2] *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Such a challenge cannot prevail so long as the rational relationship is at least debatable. *Western and Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. 648, 674, 101 S.Ct. 2070, 2086, 68 L.Ed.2d 514 (1981).

It cannot be doubted, and appellant does not contend otherwise, that Delaware has a legitimate interest in enforcing its driving under the influence laws in order to prevent the carnage caused by drunk drivers. *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). In *Neville*, the Supreme Court of the United States reaffirmed its view that states can "force a person suspected of driving while intoxicated to submit to a blood-alcohol test." *Id.* at 559, 103 S.Ct. at 920 (*citing Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). In *Schmerber*, the Court noted that due process concerns could be involved if the police used physical violence while administering the test, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force.

Section 2742(a) is rationally tailored to implement these principles. An arresting officer is not required to advise a suspect of any "right" to refuse testing, or the penalty for such a refusal. Such a suspect is, then, legitimately "forced" to submit to the test. However, when the suspect refuses to submit to testing, so that administration of the test threatens a physical confrontation, Section 2742(a) allows the police to invoke the implied consent provisions of 21 *Del.C.* § 2740 by informing the suspect of the penalty attendant to his or her refusal. If the suspect continues to refuse to submit to testing after such warning, the test will not be given. This legislative scheme of graduated responses is sensitive to the due process concerns noted in *Schmerber*, and certainly bears a rational relationship to the legitimate state interest in preventing drunk driving. Through the scheme, the State is able to obtain, in a constitutional manner, the superior evidence of a driver's blood-alcohol content. *Neville*, 459 U.S. at 563–64, 103 S.Ct. at 922. Given this rational relationship to a legitimate state interest, Brank's equal protection claim must fail.

Furthermore, it is well settled that a prosecutor can choose, without violating

---

**2.** The general rule gives way, however, when a statute classifies by means of a "suspect category" such as race, alienage, or national origin; or if the interest involved is "fundamental." In those cases a "strict scrutiny" test is applied requiring the state to show a compelling interest to justify the classification.

the equal protection clause, to apply one of two available sanctions against a defendant, even though the statutes overlap and the choice may increase the defendant's potential penalty. *United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). We see no reason why the choice given the arresting officer under Section 2742(a) bound by constitutional constraints and exercised in a non-discriminatory fashion, should be considered any differently.

Thus, since appellant did not have a right to consult counsel prior to deciding whether to submit to testing under the due process clause; and since the statute under which the test was administered is not a violation of the equal protection clause, the trial court's admission of the results of her blood test was correct.

### IV.

█ Appellant contends that the trial court's instructions to the jury, concerning the evidence of her blood-alcohol content, were improper under *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), since they created a mandatory presumption of guilt in violation of the due process clause of the fourteenth amendment.[3] The charge reads in pertinent part:

The law that prohibits driving while under the influence of alcohol says as follows: And I quote:

'Any person whose blood alcohol concentration is one-tenth of one percent—' And let me just add that in decimal terms, that's .10—'—or more by weight as shown by a chemical analysis of a blood sample, taken within four hours of the alleged offense, shall be guilty.

'This provision shall not preclude a conviction based on other admissible evidence.'

In this case, the State contends that the result of a blood test shows a blood alcohol concentration of twenty two one-hundredths, in decimal terms, .22 of one percent by weight of alcohol in the defendant's blood.

If you are satisfied beyond a reasonable doubt that the test was properly administered, and that it accurately shows the defendant's blood alcohol concentration at the time of the alleged offense, *this evidence will be proof that the defendant was under the influence of intoxicating alcohol.*

The defendant contends that the State has not proven that the result of the blood test accurately shows the blood alcohol concentration of the defendant at the time she was driving.

If you are not satisfied that it shows her blood alcohol concentration at the time she was driving, beyond a reasonable doubt, that is, if you are not satisfied that it is proof beyond a reasonable doubt that her blood alcohol concentration was above .1, then you should consider the other evidence in the case, and determine whether you find, beyond a reasonable doubt, that the defendant drove while under the influence of alcohol.

(Emphasis added.)

In *Francis*, the Supreme Court of the United States dealt with the problem of the State using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. The Court defined a prohibited mandatory presumption as one which "instructs the jury that it must infer the presumed facts if the State proves certain predicate facts." *Francis*, 471 U.S. at 314, 105 S.Ct. at 1971. Brank maintains that this charge instructs the jury that it must infer the presumed fact of intoxication if the State proves the predicate facts of proper administration of the test and a reading in excess of .10 blood alcohol content.

In our opinion, the *Francis* doctrine does not apply to this charge. Under the rele-

---

**3.** Appellant's supplemental argument that the jury instructions did not conform to 11 *Del.C.* § 3505 is clearly without merit in light of this Court's holding in *Coxe v. State*, Del.Supr., 281 A.2d 606, 607, (1971) that to the extent the two statutes conflict, § 4177 amends § 3505. (The case dealt with their predecessor statutes.)

vant statute, 21 *Del.C.* § 4177,[4] intoxication is not a fact to be *presumed.* It is, rather, a legal conclusion which *must* be reached if the statutory elements are proved beyond a reasonable doubt. As we held when this statute's predecessor was challenged as creating a conclusive presumption of guilt based on the results of a chemical test, "[t]he statute provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration 'shall be guilty.'" *Coxe v. State,* Del.Supr., 281 A.2d 606, 607 (1971). Similarly, the charge in this case, tracking the words of the statute, contained no presumption. Rather, it explained to the jury that proof beyond a reasonable doubt of the elements required by the statute would be proof that the defendant was guilty. Since no evidentiary presumption was involved in the instructions to the jury, or is even included in the statute, the *Francis* doctrine does not apply to this case. Thus, while we view the language of the instruction as being somewhat inartful (specifically, the phrase "will be proof that" in the challenged portion of the charge), we do not find that it created a mandatory presumption. It referred to a legal conclusion which according to the statute, must follow if the statutory elements are proven to the jury's satisfaction beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

**4.** 21 *Del.C.* § 4177 provides in pertinent part:
(a) No person shall drive, operate or have in actual physical control a vehicle, an off-highway vehicle, a moped or a bicycle while *under the influence of alcohol or of any drug or any combination of drugs and/or alcohol.*
(b) Any person charged under subsection (a) of this section whose blood alcohol con-

centration is one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence.