FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

**January 29, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,            (
                              (
    Plaintiff-Appellee,      (
                              (
                              (
                              (  Putnam Criminal
                              (
v.                            (  Hon. John A. Turnbull,
                              (  Judge
                              (
                              (  No. 01S01-9503-CC-00036
                              (
BILLY D. FRASIER,             (
                              (
    Defendant-Appellant.     (


# D I S S E N T I N G   O P I N I O N


I dissent from the majority's holding that a person arrested for driving under the influence of an intoxicant will be denied the right to consult with counsel prior to submitting to a breath test, regardless of the circumstances, and also from the majority's holding that the defendant's right against self-incrimination would not be violated by the admission of his refusal to submit to the breath test as evidence of intoxication.

On the first issue, the majority paints with broad strokes and reaches a conclusion which unnecessarily compromises the right of an accused to seek legal advice. I agree that there is no constitutional prohibition against requiring a person arrested for DUI to submit to the statutory test.[1] However, the accused should be permitted to consult with counsel if the consultation does not substantially impede the testing process. The majority's opinion apparently would not allow a person arrested for DUI to ask the advice of a lawyer who might be seated in the vehicle with the arrested driver or to use a car telephone to call a lawyer while waiting for the test to be administered. See State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992) (The breath testing device requires that the motorist be observed for 20 minutes prior to taking the test.).

The majority quotes extensively from Sites v. State, 481 A.2d 192 (Md. 1984), which held that a drunk driving suspect has a due process right to communicate with counsel, where doing so will not impair the accuracy of the

_____

[1]"Any person who drives any motor vehicle in the state of Tennessee shall be deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood. . . ." Tenn. Code Ann. § 55-10-406(a)(1) (1993) (amendment codified at Tenn. Code Ann. § 55-10-406 (Supp. 1995)). "[R]efusal to submit to such test will result in the suspension of the driver's operator's license. . . ." Tenn. Code Ann. § 55-10-406(a)(2).

test.  The majority concludes, however, that a <u>Sites</u>-type rule would be difficult to apply, thus denying the accused a fundamental right not out of necessity but for the mere convenience of the police.  I fail to recognize the difficulty in applying a rule that would allow the accused to attempt to contact an attorney during the time interval the arresting officer is required to observe the defendant before performing the breath test.  See <u>State v. Sensing</u>, 843 S.W.2d at 416 (holding that "the testing officer must be able to testify . . . that the motorist was observed for the requisite 20 minutes prior to the test. . .").  Such a rule, in which the burden would be on the defendant to show that the time needed to contact his lawyer would not have delayed the test, would properly balance the State's interest in enforcing the law and an arrested person's due process right to counsel.

With regard to the evidence issue, I would hold that the privilege against self-incrimination guaranteed by Article 1, Section 9 of the Tennessee Constitution prohibits the introduction of evidence that the defendant refused to take the blood or breath test.  Article I, Section 9 provides:  "That in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself."  The majority concludes that admission into evidence of the

defendant's refusal to submit to the test would not violate his right against self-incrimination, because the refusal was not evidence of a testimonial or communicative nature. The majority finds the defendant's "refusal of the test was functionally the same as if he had submitted to the test." Majority Opinion at _____ [slip op. at p. 12]. The majority does not recognize the significant distinction between the results of the test and the refusal to take the test. The majority, quoting South Dakota v. Neville, 459 U.S. 553, 563-64 (1983), says, "Nor is this a case where the State has subtly coerced respondent into choosing the option that it had no right to compel, rather than offering a true choice." Majority Opinion at _____ [slip op. at 10]. Legal sophistry aside, the coercion is more than subtle, it is blatant. The State gives the accused two choices - take the test and incriminate himself or refuse to take the test and incriminate himself. Making and declaring that choice is compelled evidence that incriminates. It is similar to compelling a handwriting sample. As stated in State v. Harris, 839 S.W.2d 54, 80 (Tenn. 1992) (Reid, C.J., dissenting):

> It is not within the accused's power to change his fingerprints, hair, breath or blood. But a handwriting exemplar requires the truthful participation of the accused if it is to possess any evidentiary value. The privilege

> against self-incrimination resulted from
> attempts to extract from a person's lips
> a true statement concerning his guilt
> and thereby to supply the needed proof
> against himself.

In this case, the statement that the State obtains from the defendant and uses as evidence of his guilt is "I refuse to take the test because I expect it would show evidence of intoxication."

The issue was put succinctly in People v. Hayes, 235 N.W.2d 182, 184-85 (Mich. Ct. App. 1975), where the court held:

> [T]he admission of a defendant's refusal
> to submit to an intoxication test would
> render nugatory the choice which the
> statute provides him . . . . He can
> either submit to a test the results of
> which could create a virtually
> irrefutable presumption of guilt against
> him, or he can refuse the test and suffer
> the revocation. If the fact that the
> defendant has chosen not to submit to a
> test can be placed before the jury as an
> inference of his guilt, then he will be
> put in the position of having to risk
> providing evidence for the prosecution by
> submitting to the test or of certainly
> providing it by refusing to submit. It
> would be fundamentally unfair to put a
> defendant in such a "damned if he does,
> damned if he doesn't" position. The
> Legislature provided a definite choice,
> and we cannot render a decision which
> would make that choice an illusory one.

In <u>Opinion of the Justices to the Senate</u>, 591 N.E.2d 1073 (Mass. 1992), the Supreme Judicial Court of Massachusetts properly and realistically analyzed the effect of a similar constitutional provision on a similar statute. That court held that a proposed statute, making a defendant's refusal to submit to a blood or breath test admissible as evidence, would violate the state constitutional privilege against self-incrimination. The court found that refusal evidence would be testimonial in nature and would compel the accused to furnish evidence against himself. The Massachusetts constitutional privilege against self-incrimination is similar to Tennessee's in that it provides: "No subject shall . . . be compelled to accuse, or furnish evidence against himself." <u>Id.</u> at 1076 n. 5. Regarding the testimonial nature of refusal evidence, the Court stated:

> The distinction between real or physical evidence and testimonial or communicative evidence is not easily made in every case. Courts which have concluded that refusal evidence was not testimonial have done so by justifying its relevance on an issue not essential to the prosecution's case, see <u>State v. Pineau</u>, 491 A.2d 1165 (Me. 1985); <u>State v. Willis</u>, 332 N.W.2d 180 (Minn. 1983), to explain the lack of test result evidence, or by concluding that the refusal evidence may be introduced because test results are admissible; <u>Hill v. State</u>, 366 So. 2d 318 (Ala. 1979). It does not logically follow, however, that, because test results are not testimonial, refusal evidence falls in the same

category. In the ordinary case a prosecutor would seek to introduce refusal evidence to show, and would argue if permitted, that a defendant's refusal is the equivalent of his statement, "I have had so much to drink that I know or at least suspect that I am unable to pass the test." See Williford v. State, 653 P.2d 339, 342-343 (Alaska. Ct. App. 1982). An involuntary statement to that effect by the defendant could not be used against him. . . . It follows, therefore, that evidence of a person's thought process, if offered to show that the person had doubts about his ability to pass the test, would be testimonial. Based on this analysis, evidence of a refusal to submit to a requested breathalyzer test is testimonial in nature.

Id. at 1077.

Regarding whether refusal evidence is compelled, the Court stated:

Some courts have reasoned that refusal evidence may be used because their analogous statutes do not compel refusal, but rather seek only to encourage taking the test. Such statutes do, however, compel the accused to choose between taking the test and incurring a penalty. There is compulsion, therefore, on the accused to choose between two alternatives, both of which are capable of producing evidence against him. The proposed statute, therefore, uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a "Catch-22" situation: take the test and perhaps produce potentially

> incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial.  Although some have said that the act of refusal is not a self-accusation, <u>South Dakota v. Neville</u>, 459 U.S. 553, 561 n. 11, 562 n. 13, 103 S. Ct. 916, 921 n. 11, 922 n. 13, 74 L. Ed. 2d 748 (1983), in our view it is simply wrong to conclude that refusal evidence used in the manner proposed is not evidence furnished by the accused. Therefore, such refusal evidence is both compelled and furnishes evidence against oneself.

<u>Id.</u> at 1078.

For these reasons, I would hold that admission of evidence of the defendant's refusal to submit to the test would violate the Article I, Section 9 privilege against self-incrimination.

_____
Reid, J.