# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. TERRY M. WATSON

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98-T-344     Frank Clement, Judge**

---

**No. M1999-00264-CCA-R3-CD - Decided June 23, 2000**

---

A Davidson County jury convicted the appellant, Terry M. Watson, of driving under the influence of an intoxicant, fifth offense. The trial court sentenced the appellant to eleven (11) months and twenty-nine (29) days, suspended after service of 300 days in the county jail. On appeal, the appellant contends that: (1) the trial court erred in admitting evidence at trial regarding his post-arrest behavior; (2) the trial court erred in admitting evidence at trial that he failed to perform field sobriety tests; (3) the evidence is insufficient to sustain his conviction for driving under the influence, fifth offense; and (4) the trial court erred in failing to instruct the jury on circumstantial evidence during the second phase of the bifurcated trial. After a thorough review of the record before this Court, we conclude that the state did not agree to suppress testimony that the appellant stated the "same thing over and over," and because such testimony concerned the appellant's behavior, the failure of the police officer to advise the appellant of his Miranda rights did not render such testimony inadmissible. Furthermore, in view of the overwhelming evidence of guilt, any error in the admission of testimony regarding the appellant's performance on field sobriety tests was harmless. The evidence of guilt of fifth offense D.U.I is more than sufficient. Finally, we conclude that the trial court did not commit plain error by failing to instruct the jury on circumstantial evidence in the second phase of the bifurcated trial. Therefore, the judgment of the trial court is affirmed.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Circuit Court of Davidson County is Affirmed**

SMITH, J., delivered the opinion of the court, in which WADE, P. J., and WEDEMEYER, J., joined.

C. Edward Fowlkes, Nashville, Tennessee attorney for the appellant, Terry M. Watson

Paul G. Summers, Attorney General & Reporter and Todd R. Kelley, Assistant Attorney General, Nashville, Tennessee, attorneys for the appellee, State of Tennessee

# OPINION

## FACTS

At approximately 2:00 a.m. on August 14, 1997, Metro Police Officer James Curtis was patrolling on Dickerson Road when he noticed a vehicle driving below the speed limit. Additionally, Officer Curtis testified at trial that the vehicle was "weaving all over the road." Curtis ran a check of the vehicle's license plates, and when he was informed that the plates were registered to a different vehicle, he activated his emergency lights. The vehicle, however, continued traveling, so the officer activated his siren. The car traveled for approximately one (1) mile before pulling over to the side of the road.

The officer got out of his vehicle and approached the other vehicle on the driver's side, where he observed the appellant "stooped" behind the wheel in the driver's seat. A passenger was also present in the vehicle. The appellant did not appear to be alert to his surroundings, and when Officer Curtis asked to see his driver's license, the appellant fumbled through his wallet, but could not produce a license. The officer observed a partially full twelve-pack of beer in the passenger area of the car, as well as two opened, partially consumed, cold containers of beer. In addition, the officer noticed an odor of alcohol about the appellant.

Officer Curtis asked the appellant to step out of the vehicle, and as he exited the vehicle, the appellant was unsteady on his feet. The officer testified that the appellant "kind of used the car as a rail to kind of guide him back to the rear of his car." After the appellant stepped from the vehicle and walked to the back of his vehicle, the odor of alcohol became more intense. Curtis then asked the appellant to take a field sobriety test, to which the appellant agreed.

The appellant started to perform the "one-leg stand," but when he lifted his leg, the appellant began to fall over into the roadway. Officer Curtis grabbed him so that he would not fall, and when the appellant attempted to perform the test a second time, he stumbled again. The officer asked the appellant to perform a different task, but the appellant refused to take any further field sobriety tests. Officer Curtis then placed the appellant under arrest for driving under the influence and transported him to the police station. Once they arrived, the officer contacted another officer to administer a breath alcohol test. However, after reading the implied consent form to the appellant, the appellant refused to take the breath alcohol test.

Officer Henry Perry was called to administer the appellant's breath alcohol test on August 14. Perry testified that the appellant's eyes were bloodshot and watery, he smelled strongly of alcohol, his speech was slurred, and he stated the same thing "over and over." After observing the appellant for some time, Officer Perry concluded that the appellant was under the influence of alcohol.

The appellant testified on his own behalf at trial. He stated that, on the evening before his arrest, he played cards with some friends. He testified that he was not drinking alcohol on that night, "just Pepsi Colas." When they finished playing cards around midnight, the appellant agreed to give Raymond Butler and Terrell Brown a ride. The appellant drove Butler to a "beer joint," and on the way, Butler purchased a twelve-pack of beer, which he left in the appellant's vehicle. The appellant testified that Officer Curtis stopped his vehicle as he was driving back home.

The appellant denied being under the influence when he was arrested. He testified that he

could not drink alcoholic beverages because of his health and that he had not drank alcohol in approximately three and one-half (3 ½) years. The appellant stated that he requested a blood alcohol test prior to his arrest, but the officer ignored him. After he was arrested, however, he did not want to be tested. The appellant claimed that the officer's testimony regarding his intoxication was erroneous and stated that the officer was "mistaking [his] case with somebody else's."

Two friends who played cards with the appellant on the evening prior to his arrest confirmed the appellant's testimony that he was not drinking alcoholic beverages on that evening. However, neither saw the appellant after the card game concluded approximately two (2) hours prior to his arrest. Neither could testify whether the appellant was intoxicated when he was arrested.[1] Additionally, Donny Osborne, an acquaintance of the appellant, testified for the defense at trial. Osborne stated that, in the approximately three (3) years that he had known the appellant, he had never seen, nor heard of, the appellant consuming alcoholic beverages.

The jury found the appellant guilty of driving under the influence of an intoxicant. In the second phase of the bifurcated proceeding, the state introduced certified copies of judgments which showed that "Terry Watson" had two (2) prior convictions for driving under the influence in Davidson County. The state also presented certified copies of court minutes which reflected that "Terry M. Watson" had two (2) prior convictions for driving under the influence in Davidson County. Thereafter, the jury convicted the appellant of driving under the influence, fifth offense.

From his conviction, the appellant now brings this appeal as of right.

## POST-ARREST BEHAVIOR

The appellant contends that the trial court erred in allowing the state to introduce testimony from Officer Perry that the appellant was "saying the same thing over and over." He claims that the prosecution agreed that it would not introduce such testimony at a pretrial suppression hearing and thereby acted in bad faith by making such a misrepresentation to the trial court and to defense counsel. He further asserts that the testimony was inadmissible in that the officer took the "statement" from the appellant in the absence of Miranda warnings.

Prior to trial, the appellant moved to suppress any statements made to law enforcement officers following his arrest, and at a subsequent suppression hearing, the following exchange occurred:

GENERAL HAYCOX:     Judge, we can deal with Mr. Fowlkes' case without hearing from witnesses.

. . .

The only statements recorded in the paperwork are statement[s] after arrest without Miranda - -

---

[1] Raymond Butler and Terrell Brown did not testify at trial. According to defense witnesses, the whereabouts of both men are unknown.

THE COURT: After [M]iranda?

GENERAL HAYCOX: Without Miranda. So the State will not be seeking to introduce that statement that's recorded in the paperwork.

. . .

Well, Judge, the statement that's recorded in the paperwork in block 43, in the officer's handwriting, stated: Dear [sic] (1) bush. And the state will not be seeking to introduce that sentence.

THE COURT: We'll suppress that.

"Block 43" referred to a particular slot on the police report wherein Officer Perry wrote his observations regarding the appellant's demeanor following his arrest. The entire contents of "block 43" read as follows: "stated: Beer (1) Bushe [sic] Brand w/ strong smell of alcohol about his present [sic], talkative, said the same thing over and over, bloodshot eyes, slurred speech, in bad shape." At trial, although the state did not attempt to introduce the contents of the appellant's statement to the police, Officer Perry testified that, while he observed the appellant following his arrest, the appellant stated "the same thing over and over."

The appellant argues that the prosecution agreed not to introduce the contents of "block 43" at trial; therefore, he maintains that the state acted in bad faith by introducing testimony that he stated "the same thing over and over" following his arrest. However, a reading of the suppression hearing shows that the state merely agreed not to introduce the statement made by the appellant, i.e., "Beer (1) Bushe [sic] Brand." Contrary to the appellant's argument, there is nothing in the record to indicate any agreement by the state to suppress the entire contents of "box 43." Thus, the prosecution did not act in bad faith by eliciting testimony from Officer Perry that the appellant was "saying the same thing over and over."

The appellant further insists that the officer's testimony that he said "the same thing over and over" constituted a "statement" by the appellant. He claims that, because the officer elicited such a "statement" from the appellant without advising him of his Miranda rights, the officer's testimony should have been suppressed at trial.

In Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966), the United States Supreme Court ruled that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires police officers, before initiating questioning, to advise a suspect of his right to remain silent and his right to counsel. If the officers fail to advise an accused of his or her Miranda warnings, any incriminating statements made will be inadmissible at trial. Id. The United States Supreme Court has construed the Fifth Amendment to only prohibit statements

-4-

of a "testimonial" or "communicative" nature, <u>Schmerber v. California</u>, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), and our Supreme Court has adopted a similar view with regard to Article I, Section 9 of the Tennessee Constitution. <u>State v. Frasier</u>, 914 S.W.2d 467, 472-73 (Tenn. 1996).

In the present case, the incriminating statement made by the appellant, i.e., "Beer (1) Bushe [sic] Brand" was suppressed at trial. However, the appellant contends that evidence of him repeating a statement "over and over" was incriminating and "testimonial in nature." We disagree. By introducing evidence that the appellant repeated a sentence "over and over," the state was merely introducing evidence of the appellant's behavior. Such evidence is much like the officer's testimony that the appellant fumbled through his wallet and was unsteady on his feet when he exited the vehicle. The appellant's conduct, although arguably incriminating, was not "testimonial in nature," and as a result, the officer's testimony regarding the appellant's conduct was properly admissible at trial.

This issue has no merit.

## FIELD SOBRIETY TESTS

In his next issue, the appellant argues that the trial court erred in allowing the state to introduce testimony regarding his performance on field sobriety tests prior to his arrest. He contends that, at a pretrial suppression hearing, the state stipulated that it would not be introducing evidence regarding any field sobriety tests performed by the appellant prior to his arrest. Thus, the appellant asserts that his due process rights were violated when the state introduced such evidence at trial.

At the pretrial suppression hearing, the appellant asked the trial court to determine the admissibility of the field sobriety tests Officer Curtis requested that he perform prior to his arrest. At the onset of the proceedings, the following transpired:

GENERAL HAYCOX:     Judge, we can deal with Mr. Fowlkes' case without hearing from witnesses. He filed some motions, one of which would be to suppress the HGN, which you'll grant.

THE COURT:     I will grant the motion to suppress the horizontal [gaze nystagmus] tasks.

GENERAL HAYCOX:     Technically, he challenge [sic] the field sobriety test, but the only field sobriety test was the HGN. So, then, they should strike that.

THE COURT:     Yeah, I can't grant something in blank, but I'll certainly suppress the HGN.

Just prior to jury selection in this case, defense counsel sought to clarify the state's intention regarding the admissibility of any field sobriety tests. The prosecutor stated that he anticipated Officer Curtis would testify that he attempted to administer the "one-leg stand," but that the appellant was too intoxicated to perform the test. He further stated that Officer Curtis would testify that, when asked to perform the "walk-and-turn" test, the appellant refused. Defense counsel objected to such testimony on the basis that the state previously agreed that no evidence concerning field sobriety tests would be introduced at trial. The trial court found that, when the prosecutor stated at the pretrial hearing that there were no other field sobriety tests, he meant that no other field sobriety tests were <u>completed</u>. Accordingly, the court concluded that the state did not agree to suppress all evidence regarding the field sobriety tests. Additionally, the trial court determined that the appellant was not prejudiced because he had knowledge of the police report wherein the officer indicated that the appellant was too intoxicated to perform the "one-leg stand" and refused to perform the "walk-and-turn" test. Officer Curtis was subsequently allowed to testify regarding the inability of the appellant to perform field sobriety tests.

The appellant contends that, by announcing to the trial court that there were no other field sobriety tests, the prosecution, in effect, stipulated that no evidence regarding field sobriety tests would be introduced. Initially, although we agree with the trial court that the appellant had knowledge that the officer attempted to administer other field sobriety tests due to the notations on the police report, the prosecutor's statement, "the only field sobriety test was the HGN," implies that no other field tests were administered.

In any event, after thoroughly reviewing the record, it is apparent that this situation arose out of a complete misunderstanding among the prosecutors, defense counsel and the trial court, and we will treat it as such. There is no indication that the prosecution intentionally misrepresented its position to defense counsel and the trial court, and absent evidence to the contrary, this Court will not assume bad faith.

In any event, any error in the admission of this testimony was clearly harmless. Even in the absence of Officer Curtis' testimony regarding the field sobriety tests, the evidence against the appellant was overwhelming. Officer Curtis stopped the appellant's vehicle after observing him driving in an erratic manner. When Officer Curtis approached the vehicle, the appellant smelled strongly of alcohol, and a partially full twelve-pack of beer was inside the vehicle. The officer noticed two cold, partially-consumed containers of beer in the vehicle, as well. When the appellant exited his vehicle, he was unsteady on his feet, and the officer testified that the appellant had to lean on the vehicle while walking to the rear of the car. After the appellant was arrested, Officer Perry observed the appellant's demeanor for a period of time. Perry noticed that the appellant's eyes were bloodshot and watery, he smelled of alcohol, and he stated "the same thing over and over." Both officers opined that the appellant was under the influence of alcohol. The testimony regarding the field sobriety tests does not "affirmatively appear to have affected the result of the trial on the merits"; therefore, we conclude that any error in the admission of such testimony was harmless. Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

This issue is without merit.

# SUFFICIENCY OF THE EVIDENCE

The appellant contends that the evidence presented at trial was insufficient to sustain his conviction for driving under the influence, fifth offense. First, he argues that a rational trier of fact could not convict him based upon Officer Curtis' testimony because it was inaccurate. Secondly, he claims that the state failed to present sufficient proof of identity to support the jury's finding that he had four (4) prior convictions for driving under the influence.

When an appellant challenges the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).

On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Bigbee, 885 S.W.2d at 803; State v. Harris, 839 S.W.2d at 75. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

First, the appellant alleges that a rational trier of fact could not have found him guilty based upon the testimony of Officer Curtis. He claims that the officer was mistaken about the number of traffic lanes on the roadway on which the appellant was stopped and, thus, argues that the officer's testimony was wholly incredible. Regardless, questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Obviously, by convicting the appellant of driving under the influence, the jury chose to accredit the officer's testimony regarding his observations relative to the appellant's intoxication. This Court may not overturn a jury's finding in this regard.

As indicated earlier, the evidence against the appellant was overwhelming. The appellant's vehicle was weaving along the roadway, and when Officer Curtis stopped his vehicle and approached the driver's side, the appellant was "stooped" in the driver's seat. The officer detected an odor of alcohol and found a partially full twelve-pack of beer in the vehicle. He also observed two cold, partially-consumed containers of beer in the vehicle. When the officer asked the appellant for a driver's license, the appellant fumbled through his wallet, but could not produce a license. The appellant was unsteady on his feet when he exited the vehicle, and Officer Curtis testified that the appellant "kind of used the car as a rail to kind of guide him back to the rear of his car." In addition, while observing the appellant, Officer Perry noticed that the appellant's eyes were bloodshot and watery, he smelled of alcohol, and he stated "the same thing over and over." Each officer testified that, in his opinion, the appellant was under the influence of alcohol. The evidence was sufficient for a rational trier of fact to conclude that the appellant was driving under the influence of an

intoxicant.[2]

The appellant also argues that the evidence is insufficient to sustain the jury's finding of fifth offense, driving under the influence. He asserts that, by merely introducing certified copies of documents reflecting prior convictions for driving under the influence under the names "Terry Watson" and "Terry M. Watson," the state failed to present sufficient evidence of identity.

In the second phase of the bifurcated trial, the prosecution introduced certified copies of judgments which showed that "Terry Watson" had two (2) prior convictions for driving under the influence in Davidson County. Both of these judgments indicated that "Terry Watson" had a birth date of June 13, 1946. Further, the state presented certified copies of court minutes which reflected that "Terry M. Watson" had two (2) prior convictions for driving under the influence in Davidson County. No additional evidence was presented.

A judgment establishing that the person arrested and ultimately convicted of an offense shared the same name with the defendant on trial is *prima facie* evidence of identity. State v. Cottrell, 868 S.W.2d 673, 678 (Tenn. Crim. App. 1992); State v. Mark John Turner, C.C.A. No. 01C01-9703-CR-00071, 1999 Tenn. Crim App. LEXIS 584, at *3-4, Davidson County (Tenn. Crim. App. filed June 16, 1999, at Nashville). A jury could properly infer that the appellant was the same person as "Terry Watson" and "Terry M. Watson" who received the prior convictions for driving under the influence. As a result, we conclude that the state presented sufficient evidence establishing the appellant's identity.

This issue has no merit.

---

[2] The relevant statute provides as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

Tenn. Code Ann. § 55-10-401(a).

## CIRCUMSTANTIAL EVIDENCE JURY CHARGE

In his final issue on appeal, the appellant contends that the trial court committed plain error in failing to charge the jury on circumstantial evidence during the second phase of the bifurcated trial. He alleges that the evidence establishing his identity as the same "Terry Watson" who received four (4) prior convictions for driving under the influence was entirely circumstantial. Thus, he maintains that the trial court committed fundamental reversible error by failing to instruct the jury regarding circumstantial evidence.

First, we note, and the appellant apparently concedes, that he has waived this issue for failing to request an instruction on circumstantial evidence at trial. State v. Brewer, 932 S.W.2d 1, 16 (Tenn. Crim. App. 1996). Moreover, the appellant failed to include this issue in the motion for new trial and has waived the issue for this reason as well. Tenn. R. App. P. 3(e); State v. Howell, 868 S.W.2d 238, 255-56 (Tenn. 1993).

The appellant urges this Court to find plain error in the trial court's failure to instruct the jury on circumstantial evidence. In support of his argument, the appellant cites State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975), in which our Supreme Court reiterated the well-settled rule that "when all the incriminating evidence against the accused in a criminal trial is circumstantial, the failure of the judge to instruct the jury the law of circumstantial evidence, whether or not the respondent requests such instructions, is fundamental reversible error." *See also* State v. Caldwell, 671 S.W.2d 459, 465-66 (Tenn. 1984).

"'Circumstantial evidence' differs from direct evidence, and consists of proof of collateral facts and circumstances from which the existence of the main fact may be deduced according to reason and common experience of mankind." Webb v. State, 140 Tenn. 205, 203 S.W. 955 (1918). "Direct evidence" is defined as "evidence which, if believed, proves the existence of the fact in issue without inference or presumption, whereas circumstantial evidence, without going directly to prove existence of a fact, gives rise to a logical inference that such a fact exists." State v. Thompson, 519 S.W.2d at 792-93. We agree with the appellant that the evidence presented at the second phase of the trial was wholly circumstantial. The certified copies of the documents indicating that "Terry Watson" and "Terry M. Watson" had prior convictions for driving under the influence did not directly prove that the person named in those documents was the appellant, but merely allowed the jury to so infer. Consequently, in typical circumstances this Court would be constrained to conclude that the trial court's failure to instruct the jury regarding circumstantial evidence is reversible error.

However, in this case, the jury was properly charged on the distinction between direct and circumstantial evidence during the guilt phase of the proceedings. The composition of the jury was not altered after the jury returned the guilty verdict, and the trial court instructed the jury at the second phase of the trial within a few hours of the trial court's charge for the guilt phase. Additionally, the trial court reminded the jurors that their obligation during the second phase of the trial was identical to that during the initial phase. Therefore, under these particular circumstances, we do not conclude that the trial court committed plain error in failing to give an instruction on circumstantial evidence.

This issue is without merit.

## CONCLUSION

After a thorough review of the record before this Court, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.