IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2003 Session

## STATE OF TENNESSEE v. HAROLD RUSSELL GREGORY

**Appeal from the Criminal Court for Davidson County**
**No. 2001-T-253     Frank G. Clement, Jr., Judge**

---

**No. M2002-01461-CCA-R3-CD - Filed July 29, 2003**

---

The defendant, Harold Russell Gregory, was convicted in the Davidson County Criminal Court of driving under the influence (DUI), second offense, a Class A misdemeanor. The trial court sentenced him to eleven months, twenty-nine days to be served as forty-five days, day for day, in the county jail and the remainder to be served on probation. In addition, the trial court suspended the defendant's driving privileges for two years, ordered that he participate in an alcohol evaluation and treatment program, and imposed a six hundred dollar fine. The defendant appeals, claiming (1) that the evidence is insufficient to support his conviction; (2) that the trial court should have granted his motion to suppress evidence that was obtained pursuant to an illegal stop; (3) that his request for an attorney was not an express refusal to take a breathalyzer test; and (4) that the trial court erred by refusing to allow a defense witness to testify. We affirm the trial court's actions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

David L. Raybin (at motion for new trial hearing and on appeal) and V. Michael Fox (at trial), Nashville, Tennessee, for the appellant, Harold Russell Gregory.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and David Gregory Vorhaus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's being stopped for DUI. During a bench trial, Corporal Daniel Okert of the Goodlettsville Police Department testified that about 9:15 p.m. on September 20, 2000, he was on patrol and responded to a citizen's complaint about a possible drunk driver on Conference Drive. He said that the citizen, who was driving and using a cellular telephone, had reported to a police dispatcher that the suspect vehicle was a red pickup truck with a dealer license

tag. He said that he saw the pickup stopped at a traffic light at Conference Drive and Long Hollow Pike and that he pulled in behind it. He said that the truck was facing north on Conference Drive and that northbound traffic had three lanes: a left lane for making left turns, a center lane for making left turns or driving straight, and a right lane for making right turns onto Long Hollow Pike. He said that the defendant's truck was in the center lane.

Cpl. Okert testified that when the traffic light turned green, the defendant turned right onto Long Hollow Pike. He said that the defendant crossed the double yellow line on Long Hollow and into the lane for oncoming, westbound traffic. He said that the defendant veered back into the eastbound lane and that he decided to stop the defendant. He said that he turned on his blue lights and that the defendant drove for one-half to three-fourths of a mile before stopping at the intersection of Long Hollow Pike and Ellen Drive. He said he walked to the driver's side of the truck and smelled alcohol. He said that the defendant wanted to know why Cpl. Okert had stopped him and that the defendant's speech was slurred. He said that the defendant admitted drinking and that he asked the defendant to get out of the truck. He said that the defendant tried to unlock the door but kept hitting the door lock button and could not get out. He said that he reached into the truck, unlocked the door, and opened it for the defendant.

Cpl. Okert testified that the defendant got out of the truck and was unsteady on his feet. He said that the defendant had to hold onto the truck for support and that he gave the defendant two field sobriety tests, the walk and turn test and the one-leg stand test. He said that the defendant failed the tests and that the defendant did not indicate he had any physical problems that would have interfered with taking the tests. He said that the defendant told him the defendant was taking medication but that the defendant would not tell him why he needed it. He said that after the defendant failed the field sobriety tests, he concluded that the defendant was driving under the influence and put the defendant into the back of his patrol car. He said that a man named Kevin Weaver arrived and that the defendant allowed Mr. Weaver to take control of the pickup. He said that a dentist's office parking lot was on the corner of Long Hollow Pike and Ellen Drive and that he did not see any cars pull into or out of the lot during the stop.

Cpl. Okert testified that he took the defendant to the police station, asked the defendant to consent to a breathalyzer test, and read an implied consent warnings form to the defendant. He said that although there was a place on the form to mark whether the defendant submitted to or refused to take the breathalyzer test, he did not mark the form. He said, though, that he gave the form to defendant in order for the defendant to mark it. He said that the defendant wanted to talk to an attorney and refused to sign the form.

On cross-examination, Cpl. Okert testified that he did not contact the citizen informant and did not know the informant's identity. He said that when the defendant turned from Conference Drive onto Long Hollow Pike, the defendant did not interfere with any other drivers. He said that if cars had been in the westbound, left turn lane on Long Hollow Pike, the defendant would have hit them. He said that the defendant pulled over in a safe and lawful manner and that Cpl. James Driver arrived at the scene. He said that the defendant did not have any containers in the truck, that he did

not have any trouble understanding the defendant, and that his patrol car did not have a video camera. He acknowledged that the smell of alcohol alone does not prove someone is driving under the influence.

Cpl. Okert testified that when he first saw the defendant at the traffic light on Conference Drive, he had not formed an opinion as to whether the defendant was driving under the influence. He said that he made that determination after the defendant failed the field sobriety tests. He said that the defendant did not have trouble getting into the patrol car or walking into the police station. He said that he did not remember testifying at the defendant's preliminary hearing that the defendant told him during the stop that the defendant had a medical problem. He acknowledged testifying at the hearing that after he arrested the defendant, the defendant's pickup truck was towed. He said that that testimony had been incorrect and that the defendant's truck was not towed.

Cpl. James Driver of the Goodlettsville Police Department testified that he assisted Cpl. Okert with a traffic stop on September 20, 2000. He said that a dentist's office parking lot was on the corner and that he did not see any cars go in or out of the lot during the stop. He said that he would have noticed cars in the lot because the patrol cars were parked right in front of the dentist's office. He said the defendant had an unusually hard time getting out of the pickup and that when the defendant got out, he was unsteady on his feet and his speech was slurred. He said that based on the defendant's field sobriety tests, he believed the defendant was intoxicated. He said that after Cpl. Okert arrested the defendant, Kevin Weaver arrived and asked to move the defendant's truck into the dentist's office parking lot. He said that he did not remember anyone else arriving at the scene.

On cross-examination, Cpl. Driver testified that he did not see the defendant drive erratically. He said that after the defendant pulled over, he walked to the truck's passenger side. He said that the defendant did not have any open containers or weapons in the pickup and was cooperative. He said that he was not close enough to the defendant to smell alcohol but that he was close enough to hear the defendant's slurred speech.

The defendant testified that he owned Nashville Used Cars. He said that on September 20, 2000, his business closed about 7:30 p.m. and that an employee went to the store and bought a six-pack of beer. He said that he drank two beers and one-half of a miniature bottle of bourbon with the employee. He said that he left Nashville Used Cars about 8:50 p.m. to go home. He said that he drove fifteen to twenty miles and stopped at the traffic light at Conference Drive and Long Hollow Pike. He said that he had his right turn signal on and that he turned right onto Long Hollow. He said that he immediately pulled into the center turn lane on Long Hollow Pike because he was going to turn left into the KFC Restaurant. He said that he changed his mind about going to KFC and continued driving east on Long Hollow. He said that he saw Cpl. Okert's blue lights but did not think the officer wanted him to stop. He said that he stopped at Ellen Drive.

The defendant testified that Cpl. Okert asked him to get out of the truck. He said that the doors would not unlock because the truck was still in gear and that everytime he tried to unlock them, they relocked immediately. He said that he put the truck in park and that Cpl. Okert reached

in and unlocked the driver's door. He said that he had no problem getting out of the truck or walking. He said that Cpl. Okert called him to the back of the truck and that he had to hold onto the truck because he had herniated and bulging disks in his back. He said that Cpl. Okert asked him to do field sobriety tests and that he told Cpl. Okert he could not do them. He said that he told Cpl. Okert that he had a medical problem but that he did not tell the officer what the problem was. He said that on the night of the stop, he had not taken any pain medication but had taken medicine for his high blood pressure and diabetes. He said that about two minutes after Cpl. Okert stopped him, Kevin Weaver arrived. He said that Lisa Harper, who used to date his son, also arrived and was sitting in her car in the dentist's office parking lot. He said he did not talk to Ms. Harper but that he asked Mr. Weaver to park his pickup truck in the lot. He said that he weighed two hundred twenty pounds, that he was not driving under the influence, and that he had no problem walking from the patrol car into the police station. He said that Cpl. Okert read a breathalyzer test consent form to him and that he understood the form. He said that he asked to telephone a lawyer and that he told Cpl. Okert he did not want to take the breathalyzer test. On cross-examination, the defendant testified that in 1996, he pled guilty to DUI. He said that he made a lawful turn from Conference Drive onto Long Hollow Pike and that he had seen people make a right turn from the center lane "all the time."

Kevin Weaver testified that at the time of trial, he had known the defendant for ten years. He said that on the night of September 20, he attended a car auction and drove toward his home on Long Hollow Pike. He said that he saw the defendant standing by a patrol car with a police officer and that he pulled over. He said that he told the officer he was the defendant's friend and that he offered to take the defendant home. He said that the officer told him someone had reported the defendant's truck was swerving and that the officer put the defendant into a patrol car. He said that he did not have a conversation with the defendant but that the defendant asked him to drive his truck home. He said that he did not have any trouble understanding the defendant and that the defendant did not seem to be under the influence.

On cross-examination, Mr. Weaver testified that the defendant telephoned him one week before trial and asked him about his testimony. He said that he clearly remembered September 20, 2000, was a Thursday because he attended car auctions on Thursday nights. He said he would be shocked to learn that September 20, 2000, was a Wednesday. He said he did not socialize with the defendant and that he did not know how alcohol affected the defendant.

Lisa Marie Brown testified that she used to date the defendant's son. She said that on the night of September 20, she was driving to K-Mart on Long Hollow Pike and saw the defendant stopped on the side of the road with the police. She said she pulled into a dentist's office parking lot and watched the defendant for a few minutes. She said that she was about fifteen feet away from the defendant, that the defendant was standing near the back of his truck, that he did not have any trouble standing, and that he did not stumble. She said that she did not see the defendant perform field sobriety tests and that she left the scene in order to telephone the defendant's wife. She said she called the defendant's wife, returned to the parking lot, and saw the police leave with the defendant a few minutes later. She said that another man moved the defendant's truck into the

-4-

parking lot and that she did not talk to the defendant. She said that she had seen people under the influence before and that the defendant did not appear to be intoxicated.

On cross-examination, Ms. Brown testified that she got into the parking lot by turning onto a side street beside the dentist's office. She said that at first, she had her headlights on but then turned them off and left her parking lights on. She said that she had not talked to the defendant about the case but that she had talked to his attorney. She said that she did not know whether the defendant drank alcohol that night.

James F. Neal and Robert Widenhofer, friends of the defendant for fifteen and seven years respectively, testified about the defendant's reputation in the community. Mr. Neal said that the defendant had a great reputation and that he had never heard bad rumors about him. Mr. Widenhofer testified that he had never known the defendant to lie. Both men said they were surprised to learn that the defendant had a 1996 DUI conviction.

Cpl. Okert testified on rebuttal that no cars pulled into the dentist's office parking lot during the stop. He said that he would have noticed a car in the parking lot and that in order for Lisa Marie Brown to have gotten into the parking lot, she would have had to squeeze her car in behind the patrol cars, which were blocking the parking lot entrance. He said that he was at the scene with the defendant for about fifteen to twenty-five minutes and that according to his police report, September 20 was a Wednesday.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his conviction because two defense witnesses testified that he was not intoxicated whereas Cpls. Okert's and Driver's descriptions about his behavior were "all over the map." The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

It is unlawful for any person to drive a motor vehicle on the public roads and highways of the state while under the influence of an intoxicant or narcotic drug. Tenn. Code Ann. § 55-10-401(a)(1). In this case, Cpl. Okert testified that the defendant made an illegal right turn and crossed the double yellow line on Long Hollow Pike. Cpl. Okert turned on his blue lights, but the defendant continued driving for at least one-half mile before stopping his truck. Cpl. Okert testified

that he smelled alcohol as he approached the defendant's pickup and that the defendant had trouble getting out of the truck. Both Cpls. Okert and Driver testified that the defendant was unsteady on his feet and that they concluded from the defendant's poor performance on the field sobriety tests that he was intoxicated. Moreover, the defendant admitted to Cpl. Okert that he had been drinking alcohol and testified at trial that he drank two beers and one-half of a miniature bottle of bourbon before driving home. Although Kevin Weaver testified that the defendant did not sound intoxicated, Mr. Weaver spoke only briefly with him. In addition, although Lisa Marie Brown testified that the defendant did not have trouble standing, she admitted that she did not speak with the defendant and did not see him perform the field sobriety tests. Finally, we note that Cpl. Okert read a breathalyzer consent form to the defendant and that the defendant refused to take the test. See State v. Frasier, 914 S.W.2d 467, 471 (Tenn. 1996) (stating that a defendant's refusing to submit to a breathalyzer test is relevant and admissible to show that the defendant was intoxicated). We conclude that the evidence is sufficient to support the conviction.

## II.  ILLEGAL STOP

The defendant contends that the trial court erred by refusing to suppress all evidence obtained pursuant to his traffic stop. He claims that the stop was illegal because Cpl. Okert relied on information that had been provided by an anonymous citizen informant, which is insufficient to create reasonable suspicion that a defendant has committed or is about to commit a crime. He contends that beyond the citizen's complaint, the facts did not justify Cpl. Okert's stopping him. The state claims that the trial court properly denied the defendant's motion to suppress. We agree with the state.

At the suppression hearing, Cpl. Okert testified that a citizen complained about a possible drunk driver on Conference Drive and gave a description of the defendant's truck. He said that he saw the defendant stopped at a traffic light at Conference Drive and Long Hollow Pike and that although the defendant was properly stopped at the traffic light, the informant's tip caused him to suspect something might be wrong with the defendant. He said, though, that the tip alone was not enough for him to stop the defendant. He said that when the light turned green, the defendant made an illegal right turn and that "I don't know that I would stop somebody initially for doing something like that." He said that he decided to stop the defendant when the defendant's truck crossed the double yellow line on Long Hollow Pike and "ended up in that opposing lane of traffic." He said that based upon the tip, the defendant's illegal turn, and the defendant's crossing the double yellow line, he believed that the defendant posed a threat to other drivers and decided to stop him.

At the close of the hearing, the trial court ruled that Cpl. Okert's seeing the defendant make an illegal right turn and cross the double yellow line justified the stop. Accordingly, it denied the defendant's motion to suppress.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Furthermore, questions about the "credibility

of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court must consider the totality of the circumstances--the entire picture." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989).

In this case, Cpl. Okert's suppression hearing testimony established that he did not stop the defendant based upon the informant's tip alone. Instead, Cpl. Okert stopped the defendant only after seeing him cross the double yellow line on Long Hollow Pike. Regardless of the information that the citizen informant had provided, once the defendant crossed the double yellow line on Long Hollow Pike, Cpl. Okert had the right to stop him. See State v. Levitt, 73 S.W.3d 159, 172-73 (Tenn. Crim. App. 2001) (providing that an officer's seeing a traffic violation provides not only reasonable suspicion but probable cause to stop a defendant); see also Tenn. Code. Ann. § 55-8-121 (prohibiting a driver from entering a no passing zone); Tenn. Code Ann. § 54-16-109 (providing that driving any vehicle "except in the proper lane provided for that purpose and in the proper direction and to the right of the central dividing curb, separation section, or line" is a Class C misdemeanor). Thus, the stop in this case was justified, and the trial court properly denied the defendant's motion to suppress.

### III. EXPRESS REFUSAL

Next, the defendant contends that his request for an attorney was not an express refusal to take a breathalyzer test, and therefore, the trial court improperly considered the refusal as evidence that he was intoxicated on September 20. The state claims that this issue is without merit because the defendant admitted during his trial testimony that he refused to take the test. We agree with the state.

During the defendant's direct testimony, the following exchange occurred:

Q. Do you remember the officer asking you or reading you that form he talked about?

A. Yes, sir, I do.

Q. You understood -- did you understand what he was telling you?

A. Yes, sir.

Q. Did you ask to call a lawyer?

A. Yes, I did.

Q. Did you?

A. Yes, sir, I did.

. . . .

Q. Did [Cpl. Okert] say anything to you at the police station about taking the breath test --

A. Yes, he did.

Q. -- other than reading that thing to you?

A. No, sir.

He asked me if I wanted to -- if I wanted to take it.

I said, No sir, I don't.

Q. Okay, the reason was what?

A. I just -- after going through what I'd gone through, I just didn't do it.

This exchange demonstrates that the defendant expressly refused to submit to a breathalyzer test and that the trial court properly considered the defendant's refusal as evidence that he was intoxicated. Regarding whether a defendant's request for an attorney can be considered a refusal, we decline to render an advisory opinion. See State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 192

(Tenn. 2000) (noting that it is well-settled that courts should not give advisory opinions). The defendant is not entitled to relief.

## IV. EXCLUSION OF DEFENSE WITNESS'S TESTIMONY

Finally, the defendant contends that the trial court committed reversible error by refusing to let a defense witness testify. The state contends that the trial court properly excluded the witness's testimony and that any error was harmless. We conclude that the defendant has waived this issue.

Before the state called its first witness, it stated to the trial court that the defense intended to call Bill Bruce, the attorney the defendant telephoned on the night of his arrest, to testify. The state did not specifically ask the trial court to exclude Mr. Bruce's testimony but stated that it wanted to make the trial court aware that Mr. Bruce was "affiliated" with the defense attorney's law firm. The defendant's trial attorney acknowledged that the defense intended to call Mr. Bruce to testify on the defendant's behalf and explained that Mr. Bruce was going to testify that he knew the defendant, that the defendant telephoned him from the Goodlettsville Police Station on the night of September 20, that Mr. Bruce had a brief conversation with the defendant, and that the defendant did not sound intoxicated. The attorney also explained that while he and Mr. Bruce had an "association," they only "split expenses and that sort of thing." The trial court asked the attorney, "Do we have a problem that he and you are in the same law firm?" and he replied, "Mr. Bruce brought that up to me."

Although the trial court determined that no rule of evidence required the exclusion of Mr. Bruce's testimony, it held that Mr. Bruce could not testify pursuant to Disciplinary Rule (DR) 5-101(B), Tenn. Sup. Ct. R. 8, Code of Prof. Resp., which states,

> A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the lawyer's firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the lawyer's firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the lawyer's firm as counsel in the particular case.

The trial court ruled that because the defendant's slurred speech was a contested matter, it was required to exclude Mr. Bruce's testimony.

We note that upon being advised that the disciplinary rule also applied to members of the firm, the trial attorney acknowledged he had nothing further to add because "that's the rule." He did not request either to withdraw or to continue the case. Rather, the defense proceeded to trial.

At the close of the proof at trial, the trial court stated that the evidence "is barely over the threshold of beyond a reasonable doubt," but found the defendant guilty of DUI, second offense. The trial court then stated that even if Mr. Bruce had testified, it would not have affected the outcome of the case. At the defendant's motion for new trial hearing, his new attorney argued that the trial court's exclusion of Mr. Bruce's testimony denied the defendant his constitutional right to present a defense. However, the trial court held that it's exclusion of Mr. Bruce's testimony had been correct in light of the supreme court's Rule 8, Code of Prof. Resp., and denied the defendant's motion.

DR 5-102(A), Tenn. Sup. Ct. R. 8, Code of Prof. Resp., provides as follows:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in the lawyer's firm ought to be called as a witness on behalf of the client, the lawyer shall withdraw from the conduct of the trial and the firm, if any, shall not continue representation in the trial, except that the lawyer may continue the representation and the lawyer or a lawyer in the lawyer's firm may testify in the circumstances enumerated in DR 5-101(b)(1) through (4)[1].

Ethical Consideration (EC) 5-10 states,

> In the exceptional situation where it will be manifestly unfair to the client of the lawyer to refuse employment or to withdraw when the lawyer will likely be a witness on a contested issue, the lawyer may serve as advocate even though the lawyer may be a witness. In making such decision, the lawyer should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of the testimony, and the effectiveness of the representation in view of the

---

[1]Pursuant to Rule 3.7 of the newly adopted Tennessee Rules of Professional Conduct, effective March 1, 2003, a lawyer generally may act as an advocate even though another lawyer in the lawyer's firm will be a witness.

> lawyer's personal involvement. . . . Where the question arises, doubts should be resolved in favor of the lawyer testifying and against becoming or continuing as an advocate.

Initially, we question the validity of the trial court's excluding Mr. Bruce as a witness because of the trial attorney's potential–or actual–ethics concern. This court has previously indicated that the disciplinary rules do not equate with rules dealing with the admission of evidence. See State v. Baker, 931 S.W.2d 232, 237 (Tenn. Crim. App. 1996) (stating that a "violation of the disciplinary rules . . . is not necessarily a valid basis for suppression of evidence"); see also TBC Corp. v. Wall, 955 S.W.2d 838, 842-43 (Tenn. Ct. App. 1997) (providing that even though the code of professional responsibility has been violated, evidence should not have been excluded). Moreover, a criminal defendant has a constitutional right to call witnesses in establishing a defense. See State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). As EC 5-10 indicates, the focus should be on trial counsel's continuing role, not on excluding the witness.

In this respect, though, we believe that the trial attorney ignored an option that would have averted the trial court's concerns. His statements to the trial court demonstrate that he was aware before trial of an ethics concern about Mr. Bruce's testifying and the disciplinary rule regarding a lawyer in the trial attorney's firm becoming a witness. In addition, the attorney's statements reveal that he knew before trial that he was going to call Mr. Bruce to testify. Therefore, pursuant to DR 5-102(A), Tenn. Sup. Ct. R. 8, Code of Prof. Resp., the attorney was obligated to withdraw from the case. By doing so, no violation of the rule would have been implicated if Mr. Bruce testified on the defendant's behalf. Although we recognize that the state did not raise this issue until minutes before the trial was to start, the attorney should have moved to withdraw from the case and to continue the trial in order to allow the defendant time to seek new counsel. By not pursuing these options once the trial court excluded Mr. Bruce as a witness, the attorney consciously chose to remain on the case and forego having Mr. Bruce testify. In other words, the attorney did not take steps that were available to him to comply with the disciplinary rule and to counteract the trial court's error, if any. See T.R.A.P. 36(a) (providing that a defendant "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error" is not entitled to relief). Given the circumstances in this case, we do not believe that the defendant is entitled to relief on this issue.

Based upon the foregoing and the record as a whole, we affirm the trial court's actions.

_____
JOSEPH M. TIPTON, JUDGE